UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TANYA MAYLE,

        Plaintiff,

                                    **Case No. 2:18-cv-1770**
    v.                             **JUDGE JAMES L. GRAHAM**
                                   **Chief Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

      Plaintiff, Tanya Mayle brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 16). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.    BACKGROUND

      On September 9, 2015, Plaintiff filed applications for both supplemental security income and for child's disability insurance benefits, alleging that she had been disabled since September 24, 1980. (R. at 275–67.) Plaintiff's applications were denied initially and upon reconsideration. (R. at 183–91, 195–99.) Plaintiff sought a *de novo* hearing before an administrative law judge.

(R. at 201–03.)  Administrative Law Judge ("ALJ") Timothy G. Keller held a hearing on

December 5, 3017, at which Plaintiff, who was represented by counsel, appeared and testified.

(R. at 115–32.)  On April 9, 2018, the ALJ issued a decision finding that Plaintiff was not

disabled within the meaning of the Social Security Act.  (R. at 43–56.)  On October 24, 2018, the

Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the

Commissioner's final decision.  (R. at 1–4.)  Plaintiff then timely commenced the instant action.

## II.     RELEVANT MEDICAL RECORDS[1]

### A.     Steven Meyer, Ph.D.

On December 30, 2015, Steven Meyer, Ph.D., a psychologist, examined Plaintiff at the

request of the Social Security Administration.  (R. at 407.)  In assessing her mental status, Dr.

Meyer noted that Plaintiff's grooming was clean and neat with well-organized thought processes.

(R. at 409.)  Plaintiff presented as childlike, shy, withdrawn, and anxious.  (*Id.*)  Plaintiff's affect

was constricted and her prevailing mood was moderately dysphoric and anxious.  (*Id.*)   Plaintiff

was alert and oriented to person, place, time and situation and had no difficulty understanding

simple or moderately complex instructions.  (*Id.*)

Dr. Meyer diagnosed Plaintiff with agoraphobia and personality disorder and assessed a

Global Assessment of Functioning ("GAF") score of 60.  (R. at 410.)  Dr. Meyer opined that

Plaintiff has the cognitive capacity to understand, remember, and carryout simple and moderately

complex routine instructions and tasks, with oral and hands-on assistance and supervision as

needed.  (*Id.*)  Dr. Meyer further opined that Plaintiff would likely be able to perform adequately

in a setting without strict production requirements.  (R. at 411.)  Dr. Meyer also opined that if

---

[1] Additional records from Six County, Inc. ("Six County") and Allwell Behavioral Health
Services ("Allwell") are addressed in the analysis section of this decision.

collateral information from other sources is consistent with her presentation today, Plaintiff would not be able to manage the social demands of a competitive work setting.  (*Id.*)  Dr. Meyer noted that Plaintiff's functioning appeared in the borderline range on the day of the examination, but opined that it was unlikely that she would sustain that in a fast-paced or changing setting. (*Id.*)  According to Dr. Meyer, "[i]f her presentation and self-report are consistent with information from other sources, it is not expected that she would be able to withstand the stress of a competitive work setting or the demands to function and make changes independently without increased symptoms and deterioration."  (*Id.*)

**B.     Nicholaas Dubbeling, Ph.D.**

Nicholaas Dubbeling, Ph.D., conducted psychological evaluations of Plaintiff on October 2, 2017, and November 10, 2017, and administered the WAIS-IV test on the latter date.  (R. at 643–47.)  Upon examination, Dr. Dubbeling noted that Plaintiff was fairly alert, oriented times four, and her speech was fluent and slightly slow with normal articulation.  (R. at 644.)  Plaintiff was unable to follow proverbs.  (*Id.*)  Her remote memory was intact but short-term memory included only one of four words.  (*Id.*)  Arithmetic was fair.  (*Id.*)  Dr. Dubbeling disagreed with Dr. Meyer, stating that Dr. Meyer's diagnosis of agoraphobia was not accurate.  (R. at 646.)  Dr. Dubbeling also stated that Dr. Meyer overestimated Plaintiff's intellectual functioning but "totally agree[s]" with Dr. Meyer that "[i]f collateral information from other sources is consistent with her presentation today, she would not be able to withstand the stress of a competitive work setting or the demands to function and make changes independently without increased symptoms and deterioration."  (*Id.*)  Dr. Dubbeling opined that Plaintiff's "ability for competitive employment [] is even worse than he [Dr. Meyer] documented.  In my opinion, with a reasonable degree of psychological certainty she is not a suitable candidate for competitive employment."

(*Id.*) Dr. Dubbeling went on to assign Plaintiff a GAF score of 30 and diagnosed her with persistent depressive disorder with early onset, social anxiety disorder, mild intellectual disability of unknown etiology. (R. at 647.) He noted that Plaintiff felt anxious in social situations, was dependent upon her aging parents, and was not independent in most areas of daily living. (*Id.*)

In a report dated November 27, 2017, Dr. Dubbeling opined that Plaintiff was "seriously limited" in the following abilities and aptitudes: remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and be aware of normal hazards and take appropriate precautions. (R. at 648.) Dr. Dubbeling also opined that Plaintiff was "unable to meet competitive standards" in the following abilities and aptitudes: maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.*) Dr. Dubbeling further opined that Plaintiff had "no useful ability to function" in the following abilities and aptitudes: maintain attention for two hour segment; work in coordination with or proximity to others without being unduly distracted; and complete a normal workday and workweek without interruptions from psychologically based symptoms. (*Id.*)

In the same report, Dr. Dubbeling opined that Plaintiff was "unable to meet competitive standards" in her abilities to understand and remember detailed instructions and to carry out detailed instructions and that she had no useful ability to function in her abilities to set realistic

goals or make plans independently of others and to deal with stress of semiskilled work. (R. at 649.) In explaining these limitations, Dr. Dubbeling stated that Plaintiff has no capacity to engage in semiskilled and skilled labor due to mild intellectual disability in combination with social anxiety and depressive disorder. (*Id.*)

Dr. Dubbeling also opined that Plaintiff was unable to meet competitive standards in her ability to maintain socially appropriate behavior and had no useful ability to function in her abilities to interact appropriately with the general public; to travel to unfamiliar place; and to use public transportation. (*Id.*) In explaining these limitations, Dr. Dubbeling stated that they were primarily due to Plaintiff's mild intellectual disability, "which precludes her from competitive employment." (*Id.*) In responding to the question whether there were any additional reasons why Plaintiff would have difficulty working at a regular job on a sustained basis, Dr. Dubbeling opined that, "generally speaking, . . . she has no capacity for competitive employment of any nature, unskilled or skilled labor." (*Id.*) Dr. Dubbeling went on to opine that Plaintiff would be absent from work more than four days per month. (*Id.*)

## D.    State agency review

On January 13, 2016, Kristen Haskins, Psy.D., state-agency psychologist, reviewed Plaintiff's medical record. (R. at 139–43, 152–56.) Dr. Haskins determined that Plaintiff had the medically determinable impairments of anxiety and personality disorders. (R. at 139–40, 152.) Dr. Haskins found that Plaintiff was moderately limited in her ability to understand and remember detailed instructions. (R. at 141–42, 154.) Dr. Haskins estimated that Plaintiff had average to borderline intellectual functions and that she was able to follow conversation as well as remember and understand to carry out simple to moderately complex instructions in a work setting. (R. at 142, 154.) Dr. Haskins also determined that Plaintiff was moderately limited in

her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 142, 155.) Dr. Haskins explained this limitation as follows:

> Her symptoms may increase when she perceives tasks to be difficult. Claimant would need work area separate from others to enhance focus where claimant would receive intermittent supervision to ensure claimant is working towards desired production and quality goals. Claimant would need occasional flexibility with changing scheduled shifts and breaks when experiencing increased periods of symptoms[.]

(R. at 142, 155.) Dr. Haskins went on to opine that Plaintiff was not significantly limited in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, explaining as follows:

> She has anxiety of being around groups of people. She is able to be around family and has had friends. She maintains the ability to work in an environment with minimal and superficial interactions with coworkers and supervisors. She cannot work in a setting requiring more than rare superficial interactions with the public.

(R. at 143, 155.) According to Dr. Haskins, Plaintiff "would need major changes to a set work routine explained in advance and slowly implemented to allow claimant time to the new expectations[.]" (R. at 143, 156.) Finally, Dr. Haskins explained Plaintiff's mental residual functional capacity ("RFC") as follows:

> She has a history of social anxiety with current diagnosis of agoraphobia and personality disorder. She reports anxiety since childhood. She is able to leave her home, but typically chooses to stay home. She denies current panic attacks, but presents as tense and anxious at times. She recently started counseling and medication for treatment-- with some reported improvements in symptoms.

(R. at 143, 156.)

On March 23, 2016, Patricia Kirwin, Ph.D., reviewed the medical record upon reconsideration. (R. at 165–66, 168–70, 177–78.) Dr. Kirwin agreed with many of the

limitations found by Dr. Haskins.  (*Id.*)  Dr. Kirwin agreed with Dr. Haskins that Plaintiff was

moderately limited in her ability to complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without

an unreasonable number and length of rest periods and added that Plaintiff was "able to perform

1 – 3 step tasks w/ no high pace or high production quotas."  (R. at 169.)  As to her mental RFC,

Dr. Kirwin also added the following:  "On recon, Clmt reported that she has not had any changes

to her conditions.  She said that there has not been any worsening and that they are the same.

Clmt reported that she has the same limitations @ Claims communication created 2/23/16."  (R.

at 170.)

## III.    ADMINISTRATIVE DECISION

On April 9, 2018, the ALJ issued his decision.  (R. at 43–56.)  At step one of the

sequential evaluation process,[2] the ALJ found that Plaintiff had had not engaged in substantially

gainful activity since his alleged onset date of September 24, 1980.  (R. at 45.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or
      equal the criteria of an impairment set forth in the Commissioner's Listing of
      Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant
      perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual
      functional capacity, can the claimant perform other work available in the national
      economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step two, the ALJ concluded that Plaintiff had the following severe impairment: anxiety disorder.  (*Id.*)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 46.)  At step four, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out simple, repetitive tasks; is able to respond appropriately to coworkers and supervisors; in a task oriented setting with no public contact, and occasional contact with coworkers.  Furthermore, the claimant is able to adapt to simple changes and avoid hazards, in a settlement without strict production quotas.

(R. at 47–48.)   In reaching this determination, the ALJ accorded "some weight" to the opinions of the state agency psychologists, Drs. Haskins and Kirwin.  (R. at 52.)  The ALJ generally agreed with and found that Plaintiff was capable of simple, repetitive tasks, but found no support in the record for a required separate work area, additional supervisions, additional flexibility regarding shifts or breaks, or noted advanced explanation of and adjustment time for changes in work routine.  (*Id.*)  The ALJ also accorded "some weight" to the opinion of Dr. Meyer.  (*Id.*)  While the ALJ agreed that Plaintiff has the cognitive capacity to understand, remember and carryout simple and moderately complex, routine instructions and tasks in a setting without strict production requirements, he found the remaining portions of Dr. Meyer's opinions were not supported.  (R. at 53.)  The ALJ assigned "little weight," however, to Dr. Dubbeling's opinion.  (*Id.*)

Relying on the VE's testimony, the ALJ determined that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 54.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 55–56.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant

of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.    ANALYSIS

Plaintiff advances one contention of error. Plaintiff asserts that the ALJ erred by not incorporating relevant mental limitations in his RFC determination, resulting in a deficient RFC that does not adequately address Plaintiff's limitations. In so arguing, Plaintiff contends that the ALJ failed to properly evaluate the mental health opinion evidence of record.

### A.    ALJ's Evaluation of the Medical Evidence

In evaluating a claimant's case, the ALJ must consider all medical opinions that she receives. 20 C.F.R. § 416.927(c). Medical opinions include any "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Here, Drs. Dubbeling and Meyer are nontreating sources. *See Smith v. Comm'r of Social Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) ("A 'nontreating source' (but examining source) has examined the [plaintiff] 'but does not have, or did not have, an ongoing treatment relationship with' her.") (citing 20 C.F.R. § 404.1502.) Although an examining source's opinion is generally is entitled to greater weight than the opinion of a non-examining source, 20 C.F.R. § 416.927(c)(1), an ALJ may reject an opinion if it is inconsistent with the record evidence. 20 C.F.R. § 416.927(c)(4); *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s),"

opinions on issues reserved to the Commissioner are generally not entitled to special

significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

### 1. Dr. Dubbeling

The ALJ considered Dr. Dubbeling's opinion regarding Plaintiff's intellectual

functioning and impairments, but assigned it "little weight[,]" reasoning as follows:

> The undersigned has also considered the opinion of Dr. Dubbeling, who opined that the Claimant's current intellectual functioning is within the intellectual disability, mild range, and that her scores preclude her from competitive employment, without consideration of depression or social anxiety, and that the claimant is not a suitable candidate for competitive employment, and diagnosed the claimant with persistent depressive disorder with early onset, social anxiety disorder, mild intellectual disability (of unknown etiology), and a GAF of 30 (Exhibit 13F, pages 4-5). The undersigned assigns this opinion little weight. With regards to Dr. Dubbeling's assessment of the presence of an intellectual disability, the undersigned assigned this little weight. Firstly, none of the claimant's relevant IQ scores fell within the sub 70 range generally associated with significantly sub average general intellectual functioning. Furthermore, Dr. Dubbeling's opinion fails to identify objective evidence of significant deficits in current adaptive functioning nor manifestation of the disorder before age 22. Rather, the claimant was able to complete her academic course work in high school, although did not obtain a diploma due to standardized testing requirements, was able to obtain a driver's license, has been able to meaningful participate in her care, and has been able to provide care to some degree to her ailing parents with whom she lives. With regard to the commentary on the claimant's ability to work, the undersigned finds that this opinion is conclusory, providing very little explanation of the evidence relied on in forming the opinion, and intrudes on issues which are reserved to Commissioner and therefore cannot be given special significance.

(R. at 53.) Plaintiff complains that the ALJ "completely failed to provide any explanation to

support his decision" to discount Dr. Dubbeling's opinion as conclusory, noting that Dr.

Dubbeling personally examined Plaintiff on two occasions, reviewed and evaluated consultative

opinions, including agreeing with Dr. Meyer's opinion that Plaintiff would not be a suitable

candidate for competitive employment. (ECF No. 10 at 11–12.)

Plaintiff's argument is not well taken. As a preliminary matter, the ALJ reasonably

discounted Dr. Dubbeling's finding that Plaintiff had an intellectual disability where none of

Plaintiff's relevant IQ scores fell within the sub-70 range, which is generally associated with significantly sub average general intellectual functioning. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05; *cf. Smith v. Comm'r of Soc. Sec.*, No. 13–12759, 2015 WL 899207, at *18 (E.D. Mich. Mar. 3, 2015) ("Even assuming plaintiff's valid IQ scores below 70, the undersigned notes that a low IQ score, in itself, is not evidence of "subaverage intellectual functioning or deficits in his adaptive functioning during [plaintiff's] developmental period.'") (quoting *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491–92 (6th Cir. 2010)).

In addition, the ALJ explained that he found Dr. Dubbeling's commentary about Plaintiff's ability to work conclusory because Dr. Dubbeling provided little explanation of the evidence underlying this opinion. (R. at 53.) A review of Dr. Dubbeling's commentary supports the ALJ's assessment, including that Dr. Dubbeling failed to specify clinical evidence to support his findings. (R. at 646.) Regardless, the ALJ properly went on to find that Dr. Dubbeling's opinion that Plaintiff "is not a suitable candidate for competitive employment" intrudes on an issue reserved for the Commissioner. (*Id.*). Accordingly, the ALJ is not required to give this opinion any particular weight. 20 C.F.R. § 404.1527(d); SSR 96–5p, 1996 WL 374183, at *5 (1996) ("Medical sources often offer opinions about whether an individual ... is 'disabled' or 'unable to work[.]' . . . Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner."); *Bass*, 499 F.3d at 511 (holding that the ALJ properly rejected a treating source's opinion that the claimant was disabled because such a determination was reserved to the Commissioner); *Smith v. Comm'r of Soc. Sec.*, No. 3:18CV622, 2019 WL 764792, at *7 (N.D. Ohio Feb. 21, 2019) (finding that because "the issue of disability is a legal, not a medical issue" and reserved to the Commissioner, "opinions on the ultimate issue of disability, regardless of their source, are not entitled to any particular weight

or deference") (citations omitted).

Plaintiff nevertheless insists that the ALJ erred in discrediting Dr. Dubbeling's opinion (and the opinions of Dr. Meyer and the state agency psychologists) because "the opinions share striking similarities with respect to specific functional limitations." (ECF No. 10 at 12.) However, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). For these reasons, the Court finds that the ALJ did not err in his consideration of Dr. Dubbeling's opinion.

### 2. Dr. Meyer

The ALJ considered Dr. Meyer's opinion and assigned it "some weight[,]" reasoning as follows:

> The undersigned has also considered the opinion of the consultative psychological examiner Dr. Meyer, who opined that: the claimant has the cognitive capacity to understand, remember, and carryout simple and moderately complex, routine instructions and tasks, with oral and hands-on assistance and supervision as needed; would likely be able to perform adequately in a setting without strict production requirements; indicated that if collateral information from other sources is consistent with her presentation today, she would not be able to manage the social demands of a competitive work setting; and if her presentation and self-report are consistent with information from other sources, would not be able to withstand the stress of a competitive work setting or the demands to function and make changes independently without increased symptoms and deterioration (Exhibit 5F, pages 4-5). The undersigned has assigned this opinion some weight. While the undersigned agrees that the claimant has the cognitive capacity to understand, remember, and carryout simple and moderately complex, routine instructions and tasks in a setting without strict production requirements, the remaining portions of Dr. Meyer's opinions are not supported. Indeed, Dr. Meyer himself qualifies these portions with the statement "that if collateral information from other sources is consistent with her presentation today." As discussed above however, the claimant's objective treatment record does not support the level of dysfunction Dr. Meyer noted. Consistently, the claimant's mental status examinations were devoid of positive findings, with anxiety symptomology consistently improving with medication and therapy. The claimant's own testimony notes that she is able to provide care in the

form of cooking and cleaning to her ailing parents, in addition to managing her own personal needs. There is no evidence of any decompensation or emergency treatment related to increased stress or her underlying anxiety disorder. Additionally, the undersigned notes that both State agency psychological consultants considered Dr. Meyer's opinion an overestimation of the severity of the claimant's restrictions/limitations based only on a snapshot of the claimant's functioning (Exhibits 1A; 2A: 5A; 6A).

(R. at 52–53.)  Plaintiff complains that the ALJ found that the record did not support Dr. Meyer's functional limitations, arguing that the mental health records contain consistent findings supporting his opinions.  (ECF No. 10 at 9–10.)

The Sixth Circuit has held that a doctor's conclusion may be properly rejected when it is "inconsistent with the substantial evidence in the record indicating otherwise." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004).  Furthermore, the Sixth Circuit has also held that it "generally defers to an ALJ's decision to give more weight to the opinion of one physician than another where, as here, the ALJ's decision is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record." *Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008) (citations omitted).

Here, substantial evidence supports the ALJ's detailed analysis of Dr. Meyer's opinion. For example, the ALJ noted that Dr. Meyer himself qualified his opinion when stating "that if collateral information from other sources is consistent with her presentation today."  (R. at 53.) The ALJ's consideration of the record and discussion provides substantial evidence to support his decision that other evidence was not consistent with or did not support the level of dysfunction noted by Dr. Meyer.  *See* 20 C.F.R. § 404.1527(c)(4) (providing that "the more consistent a medical opinion is with the record as a whole, the more weight" it is given).  For example, the record supports ALJ's explanation that Plaintiff's mental status examinations did not reflect positive findings or were otherwise unremarkable.  (*See*, *e.g.*, R. at 48–51, 408–09,

359–60, 368–69, 403–04, 436–37; 503–04, 538–39, 558, 574–80, 597–600, 635–37.)  Similarly, the ALJ's finding that Plaintiff's symptoms of anxiety improved with medication and therapy is supported by the record evidence.  (R. at 48–51, 498, 521, 570, 572–74, 580, 584, 592, 595, 603, 616, 618–19, 624, 632, 641.)  It was reasonable for the ALJ to consider that Plaintiff's condition improved after taking prescribed medication.  *See Smith v. Comm'r of Soc. Sec. Admin.*, 564 F. App'x 758, 763 (6th Cir. 2014) (finding that improvement after taking prescribed medication supports a denial of disability benefits) (citing *Hardaway v. Sec'y*, 823 F.2d 922, 927 (6th Cir. 1987)).  The ALJ also reasonably considered Plaintiff's testimony that she is able to provide care in the form of cooking and cleaning to her ailing parents, in addition to managing her own personal needs, when deciding what weight to assign to Dr. Meyer's opinion.  *See Swanson v. Berryhill*, No. 6:17-183-DCR, 2018 WL 813579, at *4 (E.D. Ky. Feb. 9, 2018) (finding that the plaintiff's statements about his daily activities "undermine his assertions that he is disabled").  In sum, substantial evidence supports the ALJ's detailed reasons for discounting portions of Dr. Meyer's opinions.  *Stiltner v. Comm'r of Soc. Sec.*, 244 F. App'x 685, 690 (6th Cir. 2007) ("The ALJ did not summarily dismiss [the doctor's] opinion.  Rather, the ALJ detailed at substantial length why he found it lacking compared with the other evidence.  This is all that we require when reviewing an administrative law judge's decision for compliance with 20 C.F.R. § 404.1527(d)(2)'s reasons-giving requirement.").

Finally, while Plaintiff points to contrary evidence in the record, the undersigned finds for the reasons previously stated that substantial evidence supports the ALJ's assessment of Dr. Meyer's opinion and the court must defer to that finding even if there is substantial evidence supporting an opposite conclusion.  *Blakley*, 581 F.3d at 406; *cf. Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013) ("The ALJ retains a 'zone of choice' in

deciding whether to credit conflicting evidence."). For these reasons, the undersigned finds that the ALJ did not err in his consideration of Dr. Meyer's opinion.

## B. Weight Assigned to State Agency Psychologists

The ALJ considered the opinions of the state agency psychologists, Drs. Haskins and Kirwin, and assigned them "some weight," reasoning as follows:

> As for the opinion evidence, the undersigned has considered the State agency psychological consultant assessments. Initially, State agency psychological consultant Dr. Haskins indicated there was insufficient evidence to evaluate the claimant's child disability benefit portion of her application, but with respect to the Title 16 portion, indicated the claimant is able to follow conversation as well as remember and understand to carry out simple to moderately complex instruction in a work setting, would need a work area separate from others to enhance focus where the claimant would receive intermittent supervision to ensure the claimant is working towards desired production and quality goals, would need occasional flexibility with changing scheduled shifts and breaks when experiencing increased periods of symptoms, in an environment with minimal and superficial interaction with coworkers and supervisors, cannot work in a setting requiring more than rare, superficial interaction with the public, and would need major changes to a set work routine explained in advance and slowly implemented to allow the claimant time to adjust to the new expectations (Exhibits 1A; 2A). At reconsideration, State agency psychological consultant Dr. Kirwin generally affirmed Dr. Haskins' initial assessment but specified that indicated the claimant is able to perform 1-3 step tasks with, no high pace or high production quotas (Exhibits 5A; 6A). The undersigned has assigned these opinions some weight. While the undersigned generally agrees with and has found the claimant capable of simple, repetitive tasks, the undersigned finds no support in the record for a required separate work area, additional supervisions, additional flexibility regarding shifts or breaks, or noted advanced explanation of and adjustment time for changes in work routine. While the claimant has been treated for anxiety with a history of difficulty with interaction, the record shows that the claimant has improved with her treatment, including being able to go out with some regularity with her friend and group members, as well as adequately adjust to changes in treatment providers with no significant disruptions in the claimant's participation with treatment or care. Additionally the undersigned notes that terms like "minimal," "superficial," and "rare" with respect to the various social function limitations are nonspecific qualifying terms that do not adequately describe function consistent with applicable policy and/or regulation nor usefully convey the extent of the claimant's limitations. Therefore, these portions of the opinions have been given only some weight and modified as reflected in the residual functional capacity assessed above.

(R. at 52.)  Plaintiff takes issue with the ALJ's finding that there was no support in the record for "functional limitations of a separate work area, additional supervision, flexibility with shifts and breaks, and advance explanation and adjustment time for changes in work routine."  (ECF No. 10 at 9.)

The ALJ's decision to reject certain limitations is supported by substantial evidence.  The ALJ may give the opinions of non-examining State agency doctors weight "only insofar as they are supported by evidence in the case record."  SSR 96-6p.  As set forth above, the ALJ observed that Plaintiff's anxiety had improved with treatment, resulting in her going out with some regularity with a friend and group member.  (R. at 52; *see also* R. at 48–51, 498, 521, 570, 572–74, 580, 584, 592, 595, 603, 616, 618–19, 624, 632, 641.)  As previously discussed, it was reasonable for the ALJ to consider that Plaintiff's condition improved after taking prescribed medication.  *See Smith*, 564 F. App'x at 763.

Plaintiff further complains that the ALJ "discredited the opinions by cursorily mentioned some favorably-selected evidence and ultimately concluding that the record showed improvement in Ms. Mayle's treatment."  (ECF No. 10 at 9.)  Essentially, Plaintiff argues that the ALJ should have weighed the evidence differently.  Yet, it is "[a]dministrative law judges [who] are responsible for reviewing the evidence and making administrative findings of fact and conclusions of law[.]"  20 C.F.R. § 404.1513a(b); *see also Schmiedebusch*, 536 F. App'x at 649. To the extent that Plaintiff accuses the ALJ of "cherry picking" evidence, such an allegation "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); s*ee also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ

improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

For all these reasons, the undersigned finds that the ALJ did not err in his consideration of the state agency psychologists' opinions. *Cf. Miller v. Comm'r of Soc. Sec.*, No. 1:16-cv-1121, 2018 WL 526553, at *6 (S.D. Ohio Jan. 23, 2018) ("Because the ALJ only partially credited the state agency psychologists' assessments, the ALJ did not err to the extent he omitted a restriction on superficial interaction from the RFC finding."), *recommendation adopted by* 2018 WL 1532527 (S.D. Ohio, Mar. 29, 2018).

**C.     RFC**

Finally, Plaintiff contends that the ALJ's improper evaluation of the opinion evidence was more than harmless error because it resulted in an inaccurate RFC. (ECF No. 10 at 14.)

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Plaintiff bears the burden of providing the necessary medical evidence to demonstrate her impairments cause functional limitations resulting in disability. 20 C.F.R. §404.1512(c). Where the ALJ has properly considered Plaintiff's evidence and substantial evidence supports the ALJ's conclusion, "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005.)

Here, Plaintiff argues the state agency psychologists and Drs. Meyer and Dubbeling all opined Plaintiff would benefit from a separate work area and additional supervision, which were not included in the RFC. (ECF No. 10 at 14.) However, the ALJ specifically considered and found no support in the record for these limitations. (R. at 52.) For the reasons previously discussed, substantial evidence supports the ALJ's assessment and the Court must defer to it. *Longworth*, 402 F.3d at 595.

Plaintiff goes on to insist that the RFC should have included additional limitations. (ECF No. 10 at 15–16.) While Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the bases for his determination, which enjoys

substantial support in the record.  *Schmiedebusch*, 536 F. App'x at 649; *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.").

## VI.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## VIII.  PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).


Date:  February 18, 2020                    s/ *Elizabeth A. Preston Deavers*
                                            ELIZABETH A. PRESTON DEAVERS
                                            CHIEF UNITED STATES MAGISTRATE JUDGE